*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

### UNITED STATES
Appellee

**v.**

### Michael R. RODRIGUEZ, Boatswain's Mate Second Class
United States Coast Guard, Appellant

**No. 18-0350**
Crim. App. No. 1450

Argued April 24, 2019—Decided June 20, 2019

Military Judges: Robert J. Crow and Cassie A. Kitchen

For Appellant: *Lieutenant Commander Benjamin M. Robinson* (argued); *Lieutenant Salomee Gethoeffer Briggs.*

For Appellee: *Lieutenant Commander Emily A. Rose* (argued); *Lieutenant Commander Stephen Miros* (on brief); *Stephen P. McCleary*, Esq.

Judge SPARKS delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges RYAN, OHLSON, and MAGGS, joined.

———————————

Judge SPARKS delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of one specification each of sexual abuse of a child and adultery in violation of Articles 120b(c) and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b, 934 (2012).[1] The sexual abuse of a child specification involved Appellant kissing his fiancé's daughter's feet, and was charged as follows:

> In that [Appellant], on active duty, did, at or near Nederland, Texas, on divers occasions, between December 2014 and April 2015, commit a lewd act upon V.G., a child who had not attained the age of 12 years, to wit: kissing V.G.'s feet with his lips,

---

[1] The military judge acquitted Appellant of obstruction of justice, indecent language, and one specification of sexual abuse of a child, and dismissed two other specifications of sexual abuse of a child.

with an intent to arouse and gratify his own sexual desire.[2]

The military judge sentenced Appellant to reduction to E-1, eighteen months of confinement, and a bad-conduct discharge. The convening authority approved only so much of the sentence as provided for eighteen months of confinement and a bad-conduct discharge, and waived automatic forfeitures for six months. The United States Coast Guard Court of Criminal Appeals affirmed. *United States v. Rodriguez*, No. 1450, 2018 CCA LEXIS 312 at *2, 2018 WL 3130849 at *1 (C.G. Ct. Crim. App. June 27, 2018).

We granted review to determine whether Appellant's conviction for sexual abuse of a child was legally sufficient.[3]

## Background

Between December 2014 and April 2015, Appellant lived with his fiancé, K.R., and her three children, including her eight-year-old daughter, V.G.

During the same time period, Appellant was having an affair with his subordinate's wife, E.J. Appellant and E.J. shared a mutual foot fetish, and frequently exchanged sexually explicit text messages involving feet-based fantasies. On April 16, 2015, Appellant twice referenced V.G. during one such text message exchange.

First, Appellant sent E.J. a text message in which he fantasized about her watching pornography and masturbating with her coworker's feet in her face. E.J. responded: "hmm [I] would shes got oriental short little feet theyre adorable [sic]." Appellant replied "Probably for [sic] the whole thing in my mouth like I do with [V.G.]." Later the same evening, they exchanged the following series of text messages:

---

[2] The military judge excepted the months listed in the initial charge sheet and substituted them with December through April when he convicted Appellant.

[3] The issue as granted was:

> Whether *United States v. Orben*, which established what the Government must show to prove intent for indecent liberties under Article 134 (the precursor to Article 120b), applies to the intent element of Article 120b(c), sexual abuse of a child.

[Appellant:] I was showing u [V.G.'s] feet.

….

[Appellant:] Posing them for u

[E.J.:] And the crazy thing was i was pretty upset. The only feet i wanted were yours

[Appellant:] Mmmmm

[E.J.:] Those little toes tho do make me happy but not the same

[Appellant:] I wanted to see u lick [V.G.'s] feet

[Appellant:] And suck on mine

At trial, E.J. testified Appellant sent her a picture of V.G.'s feet before sending the second set of text messages and described the picture as follows: "It was of [V.G.'s feet] … and she was laying across the couch with her feet up. She has on red—reddish pink nail polish. And her face was looking back at the camera."

K.R. and V.G. both testified Appellant kissed V.G.'s feet. Their testimony indicates Appellant exhibited no outward signs he was kissing V.G.'s feet with an intent to arouse or gratify his sexual desire.

The Government utilized the text messages Appellant exchanged with E.J. to prove Appellant had the specific intent to arouse and gratify his own sexual desire when he kissed V.G.'s feet.

### Discussion

Appellant argues he was acting in a fatherly, nonsexual manner when he kissed V.G.'s feet and frames his text messages to E.J. as pure sexual fantasy. He essentially argues, "[t]he mere indulgence of fantasy, even of the repugnant and unsettling kind here, is not, without more, criminal." *United States v. Valle*, 807 F.3d 508, 523 (2d Cir. 2015). He contends his child sexual abuse conviction should be set aside as legally insufficient because the Government failed to provide evidence demonstrating he possessed the requisite specific intent *at the time* he kissed V.G.'s feet, and so the mens rea and actus reus of his crime were too attenuated to sustain a conviction.

We review questions of legal sufficiency de novo. *United States v. Plant*, 74 M.J. 297, 299 (C.A.A.F. 2015). "To determine whether evidence is legally sufficient, we ask whether,

after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted) (citation omitted). "This determination is based on the evidence before the factfinder." *Id.* (internal quotation marks omitted) (citation omitted). "This standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts, and preserves the factfinder's role as weigher of the evidence." *United States v. Norman*, 74 M.J. 144, 151 (C.A.A.F. 2015) (internal quotation marks omitted) (citation omitted). "As such, '[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction.'" *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (quoting *United States v. Navrestad*, 66 M.J. 262, 269 (C.A.A.F. 2008) (Effron, C.J., joined by Stucky, J., dissenting)).

Per Article 120b(c), UCMJ, "Any person … who commits a lewd act upon a child is guilty of sexual abuse of a child and shall be punished as a court-martial may direct." *Manual for Courts-Martial, United States* pt. IV, para. 45b.a.(c) (2012 ed.) (*MCM*). As applied in Appellant's case, "lewd act" means "any sexual contact with a child." *MCM* pt. IV, para. 45b.a.(h)(5)(A). "Sexual contact" is defined as, "any touching, or causing another person to touch, either directly or through the clothing, any body part of any person, if done with an intent to arouse or gratify the sexual desire of any person." *MCM* pt. IV, para. 45.a.(g)(2)(B). "Touching may be accomplished by any part of the body." *MCM* pt. IV, para. 45.a.(g)(2)(B).[4]

In the instant case, because the act—Appellant kissing V.G.'s feet—was uncontested, our review turns solely on whether any rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found Appellant possessed the requisite mens rea at the time he kissed V.G.'s feet.

As Appellant argues, the statute clearly requires that the charged sexual act be accompanied by a specific intent. Appellant relies on this concept and our decision in *United*

---

[4] The military judge applied each of these definitions as he made his special findings.

*States v. Orben*, 28 M.J. 172 (C.M.A. 1989), to argue the mens rea and actus reus of his crime were attenuated from each other such that he did not possess the requisite mens rea at the time of the offense.

That a crime is comprised of both an actus reus and a mens rea necessarily means both components must exist at the time an offense is committed if the offense is to amount to a crime at all. *See* 21 Am. Jur. 2d *Criminal Law* § 112 ("A crime generally consists of two elements, a physical, wrongful deed … and a guilty mind that produces the act…. A crime ordinarily is not committed if the mind of the person doing the act is innocent."); *see also United States v. Pitt*, 35 M.J. 478, 479 (C.M.A. 1992) (citing, inter alia, *United States v. Gomez-Tostado*, 597 F.2d 170, 173 (9th Cir. 1979) (explaining that possession with intent to distribute is established where "intent coincides at some point with possession.")); *United States v. Hoggard*, 43 M.J. 1, 4 (C.A.A.F. 1995) (explaining in dicta that evidence of a state of mind separated from an actus reus by three to six months is too attenuated to "illuminate [an] appellant's state of mind at the time he" committed the actus reus). Although a criminal actor must possess the requisite intent *when* he commits a criminal act, circumstantial evidence—from before or after the act—may be used to prove an actor had the requisite intent at the time of the act. *United States v. Acevedo*, 77 M.J. 185, 189 (C.A.A.F. 2018) ("Intent can be shown by circumstantial evidence." (citing *United States v. Vela*, 71 M.J. 283, 286 (C.A.A.F. 2012))); *see also United States v. Kearns*, 73 M.J. 177, 182 (C.A.A.F. 2014) ("[T]he Government was free to prove Appellant's intent by circumstantial evidence." (citing *Brooks v. United States*, 309 F.2d 580, 583 (10th Cir. 1962) ("The conduct of the parties within a reasonable time before and after [an act] are circumstances which a jury may consider in determining such intent, motive or purpose."))).

In *Orben*, we stated in dicta that "displaying to a child a nude body on an anatomical chart or pictures of nude aborigines … might constitute taking indecent liberties, *if accompanied by behavior and language of an accused which demonstrated his intent*." 28 M.J. at 174–75 (emphasis added). Appellant utilizes the term "accompanied" to support his attenuation argument. As such, we initially granted review to determine whether *Orben* applies to Article 120b(c), UCMJ, sexual abuse of a child. But, we need not make that determination, for, as above, the unremarkable notion that a

crime must consist of both a mens rea and an actus reus is deeply rooted in American jurisprudence, and did not, therefore, originate in dicta in *Orben. See United States v. Morissette*, 342 U.S. 246, 251–52 (1952) ("Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took deep and early root in American soil.").

Thus, our review here turns on whether the circumstantial evidence in this case was legally sufficient to support the military judge's finding that Appellant possessed, at the time of the offense, the requisite specific intent. This question necessarily assumes the mens rea and actus reus of Appellant's offense coincided to constitute a crime, the premise underlying the above *Orben* dicta. Therefore, we conduct our legal sufficiency review independent of *Orben*, which is not dispositive.

**The military judge's special findings and conclusions**

The military judge in Appellant's case made special findings, supporting our conclusion that he correctly evaluated the circumstantial evidence and drew appropriate inferences from that evidence. These findings are especially detailed, and are supported by testimony in the record, as well as physical evidence in the form of text messages. As such, they are not clearly erroneous. *See, e.g., United States v. Cottrill*, 45 M.J. 485, 488 (C.A.A.F. 1997) ("The military judge's special findings … unless clearly erroneous, are the basis upon which we rely ….").

The military judge ultimately concluded "the Government proved, beyond a reasonable doubt, that the kissing of the [sic] V.G.'s feet was done by the accused with the intent to arouse and gratify the sexual desire of the accused." The findings demonstrate that this conclusion was based on a series of reasonable inferences, each of which was supported by the record.

First, the military judge found the intent element could have been satisfied beyond a reasonable doubt based solely on the sexually explicit text messages Appellant exchanged with E.J. The military judge found the intent element "was further strengthened by [E.J.'s] testimony that the accused would send pictures of V.G.'s feet when engaging in sexual conversation with her." This finding is supported by the time

stamps on the text messages mentioning V.G., which demonstrate they were exchanged in the midst of the sexual discussions, as well as by E.J.'s testimony that:

- Appellant sent her a photograph of V.G.'s feet just before he sent her the aforementioned text messages about V.G.'s feet; and

- he sent these photographs as "foreplay."

Second, the military judge specifically found that, although it was difficult to pinpoint the precise dates on which Appellant kissed V.G.'s feet, his conclusion that the kissing occurred between December and April was supported by the timing of E.J.'s relationship with Appellant, during which she visited Appellant's home and observed him kissing V.G.'s feet. Indeed, E.J. testified that:

- she met Appellant in December of 2014, began having an affair with him shortly thereafter, and ended the relationship in April 2015; and

- during this period she spent time in Appellant's home where she observed Appellant kiss V.G.'s feet.

Finally, relying on the evidence on the record, the military judge inferred Appellant's intent was:

> demonstrated most significantly through the accused's text messages to [E.J.]. Both preceding and following other sexually explicit text conversations, the accused's expressing an ability to put another woman's small foot into his mouth like he does with V.G.'s was compelling evidence of sexual intent when kissing V.G.'s feet. The evidence was further strengthened by additional admissions by the accused that he would pose V.G.'s feet for [E.J.] for purposes of foreplay and stating that he would like to see [E.J.] lick V.G.'s feet and suck on his.

Thus, the military judge's (1) apparent inference that Appellant was sexually aroused by V.G.'s feet and (2) ultimate conclusion that this arousal sufficiently demonstrated Appellant had a sexual intent *when* he kissed V.G.'s feet between December 2014 and April 2015 are supported by strong circumstantial evidence contained in the record.

Although contrary evidence exists in the record of trial, the incriminating text messages, sent in April 2015, suggest Appellant previously put V.G.'s entire foot in his mouth. These text messages further demonstrate Appellant was

sexually aroused by V.G.'s feet, as he sent a photograph of them to E.J. to "pose" them for her amidst a sexual fantasy, as a part of which he asked E.J. to perform sexual acts on both his and V.G.'s feet.

E.J. was in a sexual relationship with Appellant from December 2014 through April 2015 and provided ample testimony about Appellant, his feet-based sexual fantasies, their relationship, and her personal observations of Appellant kissing V.G.'s feet. Her testimony made clear she believed Appellant was sexually attracted to V.G.'s feet as he was using them as sexual "foreplay." It was thus reasonable for the military judge to infer Appellant had a specific sexual intent when he kissed V.G.'s feet between December 2014 and April 2015, just as he had a sexual intent when he sent the lewd text messages.

Given the military judge's findings and conclusions, and "draw[ing] every reasonable inference from the evidence of record in favor of the prosecution," *United States v. Pacheco*, 56 M.J. 1, 5 (C.A.A.F. 2001) (citation omitted), we are confident any reasonable fact-finder could have concluded Appellant kissed V.G.'s feet with the specific intent to arouse or gratify his sexual desires.

**Judgment**

The decision of the United States Coast Guard Court of Criminal Appeals is affirmed.